*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1698**

Brian Jeffrey Serber, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed August 18, 2014
Reversed
Johnson, Judge**

Dakota County District Court
File No. 19AV-CV-13-1432

Ryan M. Pacyga, Amber S. Thompson, Ryan Pacyga Criminal Defense, Minneapolis, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The commissioner of public safety revoked Brian Jeffrey Serber's driver's license after he was arrested for driving while impaired and refused to consent to chemical

testing. The district court rescinded the revocation on the ground that it violated Serber's Fourth Amendment rights. We conclude that the district court erred in its legal analysis and, therefore, reverse.

## FACTS

In the early-morning hours of April 28, 2013, Officer Adam Stier of the Lakeville Police Department observed a car make an illegal turn, in violation of Minn. Stat. § 169.19, subd. 1(a) (2012), and also noticed that the vehicle did not have an operating license-plate light, in violation of Minn. Stat. § 169.50, subd. 2 (2012). Officer Stier stopped the vehicle and made contact with the driver, Serber. Officer Stier detected a "very strong odor of an alcoholic beverage emanating from inside the vehicle," and he also noticed that Serber's eyes were bloodshot and watery and that his speech was slurred. Serber admitted that he had been drinking. Serber failed several field sobriety tests, and a preliminary breath test indicated an alcohol concentration of .166.

Officer Stier arrested Serber for driving while impaired (DWI), transported him to the police station, and followed the procedures of the implied-consent statute. *See* Minn. Stat. § 169A.51 (2012). Serber indicated that he understood the implied-consent advisory. When Officer Stier asked Serber whether he wished to speak to an attorney, Serber responded in the affirmative. Officer Stier provided Serber with a telephone and telephone books. After Serber made contact with an attorney, he indicated that he was "ready to proceed." Officer Stier asked Serber whether he would submit to a breath test. Serber responded, "At this time without [a] sufficient search warrant I do refuse the breath test." The commissioner of public safety revoked Serber's driver's license.

In May 2013, Serber petitioned the district court for judicial review of the revocation. *See* Minn. Stat. § 169A.53, subd. 2 (2012). In June 2013, the district court conducted an implied-consent hearing. Serber was represented by an attorney but was not personally present. At the outset of the hearing, Serber's attorney identified a single issue, "the *McNeely* slash consent issue." The parties stipulated to an exhibit consisting of the implied-consent peace-officer's certificate, the implied-consent advisory, and Officer Stier's police report. No testimony was offered during the hearing.

In July 2013, the district court issued an order rescinding the commissioner's order of revocation on the ground that, in light of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), the revocation of Serber's driver's license pursuant to the implied-consent statute is a violation of his Fourth Amendment rights. The commissioner appeals.

## DECISION

The commissioner argues that the district court erred by rescinding the revocation of Serber's driver's license. The commissioner contends that *McNeely* does not preclude the revocation of Serber's driver's license as a matter of law.

The district court's decision implicates the constitutionality of a statute, which is a question of law that is subject to a *de novo* standard of review. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). We presume that Minnesota statutes are constitutional and will declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *Id.* at 182 (quotation omitted). The party challenging a statute on constitutional grounds must meet "the very heavy burden of demonstrating beyond a

reasonable doubt that the statute is unconstitutional." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted).

We begin by noting that the holding in *McNeely* is relatively narrow. The Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." 133 S. Ct. at 1568. Accordingly, the Court concluded that the evidence in that case arising from a forcible, warrantless blood test (which was *not* performed pursuant to Missouri's implied-consent statute) was properly suppressed by the Missouri trial court. *Id.* at 1557, 1568. The Court did not hold or suggest that the Missouri implied-consent statute was constitutionally infirm. In fact, the Court spoke approvingly of implied-consent statutes by noting that its opinion does not "undermine the governmental interest in preventing and prosecuting drunk-driving offenses" through the use of "legal tools" such as "implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing." *Id.* at 1566 (plurality opinion).

The Minnesota Supreme Court emphasized this portion of *McNeely* in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), a criminal case concerning the validity of a person's consent to chemical testing pursuant to the implied-consent statute:

> Brooks's argument is inconsistent with the Supreme Court's discussion of implied consent laws in *McNeely*. As the Supreme Court recognized in *McNeely*, implied consent laws, which "require motorists, as a condition of operating a motor vehicle within the State, to consent to blood alcohol concentration testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense," are " *legal*

4

> *tools*" states continue to have to enforce their drunk driving laws. The Court noted that these laws typically require suspected drunk drivers to take a test for the presence of alcohol and mandate that a driver's license will be revoked if they refuse a test. By using this "legal tool" and revoking a driver's license for refusing a test, a state is doing the exact thing Brooks claims it cannot do -- conditioning the privilege of driving on agreeing to a warrantless search.

*Id.* at 572 (alteration in original) (citations omitted) (quoting *McNeely*, 133 S. Ct. at 1566). Although the statements about implied-consent statutes in *McNeely* and *Brooks* were not essential to the decision in either case, the statements tend to show that the revocation of a person's driver's license pursuant to Minnesota's implied-consent law does not violate the person's Fourth Amendment rights.

Furthermore, the district court's decision is inconsistent with a recent opinion of this court. In *Stevens v. Commissioner of Pub. Safety*, ___ N.W.2d ___, 2014 WL 3396522 (Minn. App. July 14, 2014), this court concluded that the implied-consent statute "does not violate the unconstitutional-conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for DWI and has refused to submit to chemical testing." *Id.* at *12. Serber included an unconstitutional-conditions argument in his memorandum to the district court, but the district court did not address it. It appears that Serber has abandoned the unconstitutional-conditions argument on appeal. Nonetheless, *Stevens* is relevant because we reasoned, in part, that if the implied-consent statute authorizes a search of a person's blood, breath, or urine, such a search would satisfy the reasonableness requirement of the Fourth Amendment. *Id.* at *6-10.

5

Serber also argues that his refusal was reasonable.  This argument apparently is an attempt to invoke the statutory affirmative defense that, "at the time of the refusal, the petitioner's refusal to permit the test was based upon reasonable grounds."  *See* Minn. Stat. § 169A.53, subd. 3(c).  Serber did not assert this defense in the district court; he is making the argument for the first time on appeal.  This court generally will not consider issues that were not presented to the district court.  *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *LaBeau v. Commissioner of Pub. Safety*, 412 N.W.2d 777, 780 (Minn. App. 1987).  Thus, we will not consider Serber's reasonable-refusal argument.

In sum, the district court erred by rescinding the revocation of Serber's driver's license on the ground that the revocation violated Serber's Fourth Amendment rights.  In light of that conclusion, we need not consider the commissioner's other arguments for reversal or Serber's responses to the commissioner's other arguments.

**Reversed.**