**STATE of Minnesota, Appellant,**

v.

**Bryan Paul NESS, Respondent.**

Nos. A12–0290, A12–0291.

Court of Appeals of Minnesota.

Aug. 20, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Brian J. Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, MN, for appellant.

David W. Merchant, Chief Appellate Public Defender, Mark D. Nyvold, Assistant Public Defender, St. Paul, MN, for respondent.

Elizabeth J. Richards, Beverly Balos, St. Paul, MN, for amicus curiae Minnesota Coalition for Battered Women.

Rana Alexander, Minneapolis, MN, for amicus curiae Battered Women's Legal Advocacy Project.

Kristine Lizdas, Minneapolis, MN, for amicus curiae Battered Women's Justice Project.

Considered and decided by LARKIN, Presiding Judge; JOHNSON, Chief Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

In these consolidated appeals by the state, challenging the dismissal of charges of violating domestic-abuse no-contact orders (DANCOs) in two separate district court files, the state argues (1) the district court erred in allowing respondent to collaterally attack the DANCOs after he failed to appeal the issuance of the DANCOs; and (2) the district court erred in finding that Minn.Stat. § 629.75 is facially unconstitutional and in dismissing the felony charges of violating the DANCOs on due-process grounds. Because there is no right to appeal the issuance of a pretrial DANCO, we hold that a challenge to the issuance of the DANCO in a subsequent prosecution for violating that DANCO is not barred as a collateral attack. However, because Minn.Stat. § 629.75 provides a defendant with adequate notice and a meaningful opportunity to be heard and is not unconstitutionally vague on its face, we hold that the statute does not violate the due-process clauses of the United States or Minnesota State Constitutions. Therefore, we affirm in part, reverse in part, and remand the case to the district court.

## FACTS

Respondent Bryan Paul Ness was arrested on January 27, 2011 for allegedly assaulting his wife, N.N., and was charged with gross-misdemeanor child endangerment, gross-misdemeanor domestic assault, gross-misdemeanor fifth-degree assault; a charge of misdemeanor domestic assault was added later. The district court issued a pretrial DANCO (DANCO 1) pursuant to Minn.Stat. § 629.75, subd. 1(b), prohibiting respondent from contacting N.N. Respondent was convicted of domestic assault for the January 27 incident in February 2011.

On March 6, 2011, respondent was arrested and charged with violating DANCO 1. The DANCO 1 violation was enhanced to a felony offense under Minn.Stat. § 629.75, subd. 2(d)(1), which requires charge enhancement when the defendant knowingly violates a DANCO issued by the court within ten years of the first of two or more previous qualified domestic-violence-related convictions. The predicate convictions consisted of a 2009 fifth-degree assault conviction and the February 2011 domestic-assault conviction. On March 7, 2011, the district court issued a new pretrial DANCO (DANCO 2) in connection with these new charges.

On November 23, 2011, respondent was arrested and charged with a felony count of violation of a DANCO and obstructing legal process, after an incident in which he violated DANCO 2. In January 2012, respondent filed a motion to dismiss, arguing that Minn.Stat. § 629.75, subd. 1(b), (c), violates due process under the federal and state constitutions. On February 8, 2012, the district court issued two separate orders dismissing respondent's two counts of felony violation of a DANCO, stemming from the March 6, 2011 and November 23, 2011 incidents. The district court held that respondent was allowed to challenge the issuance of the pretrial DANCO in a subsequent prosecution for violating the DANCO and held that Minn.Stat. § 629.75, subd. 1(b), (c), is unconstitutional on due-process grounds. Specifically, the district court ruled that the statute provides defendants with no procedural due-process protections and is unconstitutionally vague because it encourages arbitrary enforcement. The state appeals.

## ISSUES

I. Did the district court err in allowing respondent to collaterally attack the DANCOs when he failed to appeal the issuance of the DANCOs?

II. Did the district court err in finding that Minn.Stat. § 629.75 is facially unconstitutional and in dismissing the felony charge of violating the DANCOs on due-process grounds?

## ANALYSIS

### I. Collateral Attack

Before we reach the constitutionality issue, we must first decide whether respondent was allowed to challenge the constitutionality of Minn.Stat. § 629.75 in a subsequent prosecution for violating a DANCO. "Purely legal issues are reviewed de novo." *Davis v. Danielson,* 558 N.W.2d 286, 287 (Minn.App.1997), *review denied* (Minn. Mar. 18, 1997).

Appellant argues that the district court erred in allowing respondent to collaterally attack the DANCO when he failed to appeal the issuance of the DANCO. Respondent did not challenge either of the two DANCOs when they were initially issued, on January 27, 2011 and March 7, 2011. Rather, respondent challenged the constitutional validity of the underlying DANCOs in the subsequent prosecution for felony violations of the DANCOs. The district court concluded that, because a de-

fendant does not have a clear right to appeal a pretrial DANCO issued pursuant to Minn.Stat. § 629.75, a defendant is not barred from challenging the order in a subsequent proceeding.

■ "A domestic abuse no contact order is an order issued by a court against a defendant in a criminal proceeding . . . ." and "is independent of any condition of pretrial release or probation imposed on the defendant." Minn.Stat. § 629.75, subd. 1(a), (b). A collateral attack is an "attack on a judgment in a proceeding other than a direct appeal." *Black's Law Dictionary* 298 (9th ed.2009). "As a general rule, a party's failure to appeal the issuance of a court order precludes a collateral attack on that order in a subsequent proceeding." *State v. Romine,* 757 N.W.2d 884, 889–90 (Minn.App.2008); *see also State v. Harrington,* 504 N.W.2d 500, 502–03 (Minn.App.1993) (holding that a defendant who failed to appeal a harassment restraining order in the case in which it was issued could not challenge the constitutionality of that order in a subsequent criminal prosecution for violating it), *review denied* (Minn. Sept. 30, 1993).

*Harrington* involved two individuals who were charged with violating a harassment restraining order (HRO) and subsequently challenged the constitutional validity of the underlying HRO. 504 N.W.2d at 501. This court noted that, "[f]ollowing issuance of a restraining order, the restrained party has an appeal time of 30 days from service of written notice of the order. Appellants did not appeal the validity of the order, and thus are precluded from attacking it in this subsequent action." *Id.* at 503 (citation omitted). Therefore, in the case of an HRO, a defendant must appeal from the issuance of the initial restraining order and may not collaterally attack the issuance in a subsequent action for a violation of the underlying HRO. *Id.*

*Romine* involved an individual who was charged with violating an order for protection (OFP) and then challenged the constitutional validity of the underlying OFP in the district court and on appeal. 757 N.W.2d at 888–89. This court noted that the OFP was issued "following an evidentiary hearing at which Romine appeared" and that "Romine had the right to appeal from the issuance of the OFP." *Id.* at 890. Additionally, "Romine initially pursued an appeal from the issuance of the OFP but voluntarily dismissed it." *Id.* Consequently, this court determined that Romine could not collaterally attack the underlying OFP on which his conviction was based. *Id.*

■ In contrast to the defendants in *Romine* and *Harrington,* the defendant in this case did not have a right to appeal the issuance of the pretrial DANCO. Both Harrington and Romine failed to appeal as of right in the proceedings in which the courts imposed the underlying orders. *Harrington,* 504 N.W.2d at 503; *Romine,* 757 N.W.2d at 889–90. Because HROs and OFPs are civil orders, they may be appealed under the Minnesota Rules of Civil Appellate Procedure. *See* Minn. R. Civ.App. P. 103.03(g) ("An appeal may be taken to the Court of Appeals: . . . except as otherwise provided by statute, from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding"). However, unlike an HRO or an OFP, a DANCO is not an order in a civil case, and is not issued at the petitioner's request through the civil court process. *See* Minn.Stat. § 609.748 (2010) (harassment restraining order statute); Minn.Stat. § 518B.01, subd. 4 (2010) (order for protection). Rather, a DANCO is "an order issued by a court against a defendant in a criminal proceeding." Minn.Stat. § 629.75, subd. 1(a).

A defendant's right to appeal a criminal order to the court of appeals is governed by Minn. R.Crim. P. 28.02, subds. 1, 2, which allow a defendant to appeal adverse final judgments, sentences, or orders allowing or imposing conditions of release. Under rule 28.02, a DANCO issued as a postconviction probationary order may be appealed along with the underlying conviction as a final judgment and order of the court. However, pretrial DANCOs are not final orders of the court and are "independent of any condition of pretrial release...." Minn.Stat. § 629.75, subd. 1(b). While Minn. R.Crim. P. 28.02, subd. 3, allows the court of appeals to grant review of an order not otherwise appealable, in which case the petition must be served and filed within 30 days after entry of the order appealed, such review is discretionary. Because there is no clear right to appeal the issuance of a pretrial DANCO, the holdings of *Romine* and *Harrington* are distinguishable, and a defendant may properly challenge the issuance of a pretrial DANCO in a subsequent proceeding for violation of that DANCO.[1] *Cf. Davis,* 558 N.W.2d at 288 (holding that appellants could not collaterally attack a district court order that was directly appealable).

## II. Due Process

Appellant argues that the district court erred in finding that Minn.Stat. § 629.75 is unconstitutional and in dismissing the felony charges of violating the DANCOs on due-process grounds. Respondent challenged the constitutionality of Minn.Stat. § 629.75 on its face, contending that subdivisions 1(b) and 1(c) violate a defendant's right to due process under the United States and Minnesota Constitutions. The district court found that the statute fails to provide adequate procedural due process and is unconstitutionally vague.

Minn.Stat. § 629.75, provides, in relevant part:

> Subdivision 1.... (b) A domestic abuse no contact order may be issued as a pretrial order before final disposition of the underlying criminal case or as a postconviction probationary order. A domestic abuse no contact order is independent of any condition of pretrial release or probation imposed on the defendant. A domestic abuse no contact order may be issued in addition to a similar restriction imposed as a condition of pretrial release or probation....
>
> (c) A no contact order under this section shall be issued in a proceeding that is separate from but held immediately following a proceeding in which any pretrial release or sentencing issues are decided.

 "The constitutionality of a statute is a question of law that we review de novo." *SooHoo v. Johnson,* 731 N.W.2d 815, 821 (Minn.2007). "Our power to declare a law unconstitutional is to be exercised only when absolutely necessary in the particular case and then with great caution." *Id.* (quotation omitted). We presume that in enacting Minn.Stat. § 629.75 the legislature did not intend to violate either the United States Constitution or Minnesota Constitutions. Minn. Stat. § 645.17 (2010) ("[T]he legislature does not intend to violate the Constitution of the United States or of this state"). "Accordingly, we will uphold a statute unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt." *SooHoo,* 731 N.W.2d at 821.

---

1. There may be cases where the underlying criminal case supporting a pretrial DANCO is dismissed, but the defendant is charged with violating the DANCO. Without a right to challenge a pretrial DANCO in a subsequent proceeding, the defendant would be denied a remedy.

"A facial challenge to the constitutionality of a statute requires a showing that no set of circumstances exists under which the Act would be valid." *Id.* (quotation omitted).

## A. Procedural Due Process

 No person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amends. V; XIV, § 1; *see also* Minn. Const. art. I, § 7 ("No person shall be held to answer for a criminal offense without due process of law."). "The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States." *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988). Through their respective due-process clauses, both the United States and Minnesota Constitutions require that an individual receive "adequate notice and an opportunity to be heard before being deprived of life, liberty, or property." *Christopher v. Windom Area Sch. Bd.*, 781 N.W.2d 904, 911 (Minn.App.2010). "This court reviews the procedural due process afforded a party de novo." *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 304 (Minn.App.2007). To determine whether an individual's right to procedural due process has been violated, a reviewing court must first determine whether a protected liberty or property interest is implicated and then determine what process is due by applying a balancing test. *Obara v. Minn. Dep't of Health*, 758 N.W.2d 873, 877–78 (Minn.App.2008) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332, 335, 96 S.Ct. 893, 901, 903, 47 L.Ed.2d 18 (1976)).

 A DANCO clearly implicates a protected liberty interest, by ordering a defendant to have no contact with a family or household member. *See* Minn.Stat. §§ 629.75, subd. 1 (defining a DANCO as an order issued against a defendant for domestic abuse, harassment or stalking of a family or household member, violation of an OFP, or violation of a prior DANCO), 518B.01, subd. 2(a) (2010) (defining domestic abuse as abuse "committed against a family or household member by a family or household member"). The DANCO issued in this case ordered the defendant "to have no contact directly, indirectly or through others, in person, by telephone, in writing, electronically or by any other means with the protected person(s). . . ."

 Because Minn.Stat. § 629.75 implicates a protected liberty interest, we apply the *Mathews* balancing test to determine what process is due.

> The *Mathews* balancing test requires this court to consider: (1) the private interest that will be affected by the governmental action; (2) the risk of erroneous deprivation of this interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, 'including the function involved and the fiscal and administrative burdens that the additional or substantive procedural requirements would entail.'

*Obara*, 758 N.W.2d at 878 (quoting *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903). In analyzing these factors, we note that "the concept of procedural due process is flexible." *Sweet v. Comm'r of Human Servs.*, 702 N.W.2d 314, 320 (Minn.App.2005), *review denied* (Minn. Nov. 15, 2005). "All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." *Mathews*, 424 U.S. at 349, 96 S.Ct. at 909 (quotation omitted).

### 1. Private Interest Affected

The first *Mathews* factor considers the private interest at stake: here, the defendant's right to contact a family or household member. While an individual has a liberty interest in contacting a family or household member, we must balance this interest and the risk of an erroneous deprivation of that interest through unfair process, against the nature of the government's interest.

### 2. Procedure Used

The second *Mathews* factor considers the procedures used by the government, the potential risk of an erroneous deprivation of the private interest through the procedures used, and the probable value of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. Appellant argues that the district court erred in finding that defendants are provided "no due process at all" when courts issue pretrial or probationary DANCOs pursuant to Minn.Stat. § 629.75. We agree that this was error.

### (a) Notice

■ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965). "The degree of notice required ... varies with the circumstances and conditions of each case." *Comm'r of Natural Res. v. Nicollet Cnty. Pub. Water/Wetlands Hearings Unit*, 633 N.W.2d 25, 29 (Minn.App.2001) (quotation omitted), *review denied* (Minn. Nov. 13, 2001).

Here, the DANCO statute itself does not contain a notice provision. *See* Minn.Stat. § 629.75. That does not end our analysis, because DANCOs are issued in connection with criminal proceedings involving specified criminal offenses. *See* Minn.Stat. § 629.75, subd. 1(a) (listing the offenses for which a DANCO may be issued as domestic abuse, harassment or stalking of a family or household member, violation of an OFP, and violation of a DANCO).[2] A defendant is aware of the criminal charge and the facts underlying the charge when the defendant is given a copy of the complaint, and is therefore put on notice through Minn.Stat. § 629.75 that, if the charge is for one of the offenses enumerated in the statute, the court may consider issuing a DANCO after setting the conditions of release or the terms of probation. *See* Minn.Stat. § 629.75, subd. 1(a), (b). "[U]nder well-established principles of law [all people] are conclusively presumed to be aware of existing statutes...." *Albrecht v. Sell*, 260 Minn. 566, 569–70, 110 N.W.2d 895, 897 (1961); *see also State v. King*, 257 N.W.2d 693, 697–98 (Minn.1977) ("All members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual activities."). Moreover, common sense suggests that a defendant charged with the crime of abusing, harassing or stalking a family or household member—or, even more so, with violating an OFP or a prior DANCO—would not be surprised to learn that the court may consider prohibiting him or her from contacting the victim. Therefore, we conclude that the

---

**2.** " 'Domestic abuse' means the following, if committed against a family or household member by a family or household member: (1) physical harm, bodily injury, or assault; (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or (3) terroristic threats, ... criminal sexual conduct, ... or interference with an emergency call." Minn.Stat. § 518B.01, subd. 2(a).

context in which Minn.Stat. § 629.75 is invoked provides a defendant with adequate notice that a DANCO may be issued.

### (b) Opportunity to Be Heard

Next, we consider whether the statute provides a defendant with an opportunity to be heard. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902 (quotation omitted). "[S]ome form of hearing is required" before an individual is deprived of a protected interest. *Id.*

Minn.Stat. § 629.75 clearly requires "some form of hearing" before a DANCO is issued and the statute contemplates that such a hearing will indeed occur. Pursuant to Minn.Stat. § 629.75, subd. 1(c), a DANCO "shall be issued in a proceeding that is separate from but held immediately following a proceeding in which any pretrial release or sentencing issues are decided." When the district court issues a postconviction-probationary DANCO, a defendant has already received a full adversarial hearing, during which he or she has had an opportunity to call and confront witnesses and produce and examine evidence. This is not the case when a judge issues a pretrial DANCO. However, the Minnesota Supreme Court has indicated that a criminal defendant at a pretrial hearing is not entitled to "the full panoply of adversarial safeguards such as witness confrontation, cross-examination, and compulsory process for witnesses." *State v. Rud,* 359 N.W.2d 573, 577 (Minn.1984); *see also Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (holding that a probable-cause determination may be made without a full adversarial hearing). It follows, then, that a defendant at a pretrial proceeding, separate from the pretrial hearing, is entitled to even fewer adversarial safeguards.

This court must consider the risk of an erroneous deprivation of a defendant's private interest through the procedures used in issuing a DANCO pursuant to Minn. Stat. § 629.75, as well as the probable value of additional or substitute procedural safeguards. In finding that the "proceeding" provided for by Minn.Stat. § 629.75, subd. 1(c), was inadequate, the district court contrasted the procedural standards in place for the issuance of a DANCO pursuant to Minn.Stat. § 629.75 with the standards in place for the issuance of an OFP or an HRO. The OFP and HRO statutes specify: (1) who may petition the court for relief; (2) what must be alleged and contained in the petition; (3) notice and service requirements; (4) when an order can be issued ex parte; (5) under what circumstances a hearing is required; (6) what relief can be provided by the court; and (7) procedures for extending an OFP or HRO. *See* Minn.Stat. §§ 518B.01, 609.748.

However, unlike an OFP or HRO proceeding, which is initiated by the victim, a DANCO proceeding pursuant to Minn. Stat. § 629.75, subd. 1(c), is initiated by the court or a prosecutor in a case where the defendant has been criminally charged with domestic abuse. By signing the complaint, the judge has already made a finding of probable cause for the underlying criminal charge—the type of findings that would support the issuance of an OFP or an HRO. *See Bell v. Burson,* 402 U.S. 535, 540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1971) (holding, in the context of the revocation of a state-granted driver's license, that due process required only that the prerevocation hearing involve a probable-cause determination as to the fault of the licensee, noting that the hearing "need not take the form of a full adjudication of the question of liability").

Thus, while there is a possibility that a defendant may be erroneously deprived of his or her private interest right to contact the protected person pending trial, that risk is greatly minimized by the fact that the court has already concluded that probable cause supports the underlying criminal charge. For a pretrial DANCO, this risk of erroneous deprivation is limited to the time between the DANCO proceeding and the time of trial or the plea hearing. Moreover, a defendant may argue against the DANCO being issued at the pretrial proceeding.[3] Finally, nothing prevents a defendant from moving the court to modify or lift the DANCO. Therefore, this factor weighs in favor of the state because the risk of an erroneous deprivation is slight and the defendant is provided with notice and an opportunity to be heard.

### 3. Government Interest

The third *Mathews* factor considers the government's interests and the function and burdens that additional or substitute procedural requirements would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. "[T]he state has a significant interest in protecting the victims of domestic violence." *Rew ex rel. T.C.B. v. Bergstrom*, 812 N.W.2d 832, 839 (Minn.App.2011), *review granted* (Minn. Mar. 20, 2012). Moreover, DANCOs may help ensure the integrity of the judicial process by preventing a defendant from influencing a victim's participation in a case. One of the most important actions a court can take to protect a victim of domestic abuse is to prohibit the defendant from having any contact with the victim pending a trial on the alleged abuse. This factor thus weighs heavily in favor of the state.

In balancing the three *Mathews* factors, we conclude that the procedures provided by Minn.Stat. § 629.75 are constitutionally sufficient and do not violate a defendant's right to due process.

### B. Vagueness

Finally, appellant argues that the district court erred in finding that Minn.Stat. § 629.75 is unconstitutionally vague, in violation of due process. The district court found that the statute contains "absolutely no guidance or standards for a district court to apply when determining whether to issue [a DANCO]," and that, without such standards, a district court has unfettered discretion in determining when to issue a DANCO, creating a danger that the statute will be applied arbitrarily. We disagree.

"Vague penal statutes are prohibited as a violation of due process." *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn.App.2006). "If a statute imposes criminal penalties, a higher standard of certainty of meaning is required." *Id.* A penal statute can violate the void-for-vagueness doctrine in two ways: (1) if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute; or (2) if it authorizes or encourages arbitrary and discriminatory enforcement. *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn. 1985). A statute authorizes or encourages arbitrary and discriminatory enforcement when it lacks adequate standards restricting the discretion of the governmental authority that applies it. *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966); *Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). The courts have determined that it is this second prong of the void-for-vagueness doctrine that is of greater importance. *City*

---

3. There is no allegation that this defendant or defendants in other domestic-abuse cases are being denied a hearing to contest the issuance of the DANCO.

*of Mankato v. Fetchenhier,* 363 N.W.2d 76, 78 (Minn.App.1985) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)).

■ There is no argument here that the DANCO statute fails prong one of the void-for-vagueness doctrine. Rather, respondent argued, and the district court found, that the statute violates prong two of the void-for-vagueness doctrine by encouraging arbitrary and discriminatory enforcement. We disagree. While it is true that Minn.Stat. § 629.75 does not explicitly set forth the factors that the district court should consider in deciding whether to issue a DANCO, we do not believe that this invalidates the statute.

This court considered a vagueness challenge to the prima facie reference statute, which permits juveniles to be prosecuted as adults when they commit an aggravated felony against a person and in doing so, act "with particular cruelty or disregard for the life or safety of another." *In re Welfare of K.C.,* 513 N.W.2d 18, 21–22 (Minn. App.1994) (quotation omitted), *review denied* (Minn. May 17, 1994). We held that the statute is not void for vagueness because the state is still required to "show the offense committed was within the definition of an aggravated felony against the person." *Id.* at 22 (quotation omitted). Additionally, we noted that numerous court decisions had been issued applying the term "particular cruelty" to various felonies. *Id.* These limitations "reduce[d] the degree to which the prima facie reference statute may be arbitrarily and discriminatorily enforced." *Id.*

Similarly, a judge's discretion in issuing a DANCO is sufficiently limited because there must already be a criminal proceeding filed regarding an enumerated offense (domestic abuse, harassment or stalking of a family or household member, violation of an order for protection, or violation of a prior DANCO) before a court can issue a DANCO. All of these offenses must have been committed against a "family or household member," defined as:

(1) spouses and former spouses;

(2) parents and children;

(3) persons related by blood;

(4) persons who are presently residing together or who have resided together in the past;

(5) persons who have a child in common regardless of whether they have been married or have lived together at any time;

(6) a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time; and

(7) persons involved in a significant romantic or sexual relationship.

Minn.Stat. § 518B.01, subd. 2(b).

Moreover, as in *In re Welfare of K.C.,* there are sources to look to for guidance in examining what factors to consider when deciding whether to issue a pretrial DANCO. While Minn.Stat. § 629.75, subd. 1(b) clearly states that a DANCO is "independent of any condition of pretrial release or probation imposed on the defendant," the statute goes on to say that DANCOs "may be issued in addition to a similar restriction imposed as a condition of pretrial release or probation." Therefore, both Minn.Stat. § 629.72, subd. 2, and Minn. R.Crim. P. 6.02, subd. 2, which contain the factors for a court to consider when setting terms of conditional release, also provide helpful guidance to our district courts when they decide whether to issue a DANCO pursuant to Minn.Stat. § 629.75. These factors include, but are not limited to: the facts surrounding the arrest, the weight of the evidence against the defendant, the defendant's record of convictions, the seri-

ousness of the offense, the threat posed by contact with the alleged victim, and the preferences of the alleged victim.[4]

Additionally, as noted above, because the judge has already signed the domestic-abuse complaint, a judge has already made a probable cause determination in the case. If a defendant does not believe there is sufficient probable cause to support the domestic-abuse charge underlying the issuance of the DANCO, he or she is free to challenge the probable cause determination or the issuance of the DANCO at the initial appearance or at the subsequent "proceeding."

With these considerations, we are confident that Minn.Stat. § 629.75 is not unconstitutionally vague and that the statute satisfies the due-process requirements of the United States and Minnesota Constitutions.

## DECISION

Because there is no right to appeal a pretrial DANCO issued pursuant to Minn. Stat. § 629.75, subd. 1(b), we affirm the district court's holding that a defendant is allowed to challenge the issuance of a DANCO in a subsequent prosecution for violating the DANCO. But because Minn. Stat. § 629.75 provides a defendant with notice and an opportunity to be heard, and is not void for vagueness, we reverse the district court's holding that the statute unconstitutionally violates due process and remand the case to the district court.

**Affirmed in part, reversed in part, and remanded.**

4. At the oral argument, the state confirmed that these factors are already being applied by district courts in deciding whether to issue pretrial DANCOs.